**AMERICAN TRANSFER AND STOR-
AGE COMPANY, Appellant,**

v.

**Bob BULLOCK, Comptroller of Public
Accounts, Appellee.**

**No. 12228.**

Court of Civil Appeals of Texas,
Austin.

July 9, 1975.

Rehearing Denied July 23, 1975.

Claude R. Wilson, Jr., Golden, Potts, Boeckman & Wilson, Dallas, for appellant.

John L. Hill, Atty. Gen., Alberto Garcia, Asst. Atty. Gen., Austin, for appellee.

O'QUINN, Justice.

American Transfer and Storage Company brought this suit to recover $11,654.67 in sales taxes paid under protest to the Comptroller of Public Accounts of Texas. The trial court rendered judgment that appellant take nothing by its suit.

Appellant contends the Comptroller had no legal basis for collection of the tax because (1) the statute levying the tax "is, in its entirety, violative of Article VIII, Section 1 of the Texas Constitution of 1876 [Vernon's Ann.St.]"; (2) designated sections of the statute "violate that part of Article VIII, Section 1 . . . which states that 'taxation shall be equal and uniform,'" and (3) the designated sections of the statute "violate the equal protection clause of the 14th Amendment of the Constitution of the United States."

We will overrule all points of error and affirm the judgment of the trial court.

Appellant, American Transfer and Storage Company, is a Texas corporation engaged in the business of moving and storing household properties. Appellant purchases packing and packaging materials which the company uses in the sale of its services connected with moving and storing household effects. When appellant renders its services the packing containers and materials do not become the property of its customers, title to the containers and materials being retained by the company. Appellant sells only its services in moving and storing goods and does not sell any tangible property.

It appears undisputed that appellant belongs to an industrial class that purchases packing and packaging materials in furtherance of selling services, and that a charge for services to the customer "includes labor plus the furnishing of material." Industries other than the moving and storage business are required, under enforcement practices of the Comptroller pursuant to tax statutes, to pay sales and use taxes in connection with use of wrapping and packaging material in furtherance of sales of services.

The Texas "Limited Sales, Excise and Use Tax" is Chapter 20 of Title 122A, Taxation-General, V.A.T.S. Under this Act a "limited sales tax" is imposed on the "receipts from the sale at retail of all taxable items within this State." (Art. 20.02) An "excise tax" is imposed on "the storage, use or other consumption . . . of taxable items purchased, leased or rented from any retailer for storage, use or other consumption . . . at the same percentage rate" as provided in Article 20.02. (Art. 20.03) Chapter 20 thus imposes a tax on the *sale* and *use* of certain tangible personal property, but the statutes do not impose the tax on *services.*

As a result of an audit of appellant's books and records, the Comptroller made a determination of deficiency for sales and use taxes due on purchases by appellant of packing and packaging materials used in the sale of its services in moving and storing household goods. The Comptroller takes the position that the mechanism is available to appellant under the statutes by which appellant may include in the rates it charges its customers all sales and use taxes paid to the State on purchase of such materials used in the business of moving and storing goods. The record shows that appellant customarily includes in its charges "labor plus the furnishing of material," but not the tax, since none was paid prior to the Comptroller's audit.

Under its first point of error appellant contends that Article VIII, section 1, of the Constitution of Texas limits the legislature's taxing power to four subjects only, those being property, polls, occupations, and income. "The provisions of Article VIII, section 1 are limiting," appellant urges, "and, by virtue of these limitations, the Legislature was without power to levy the Limited Sales, Excise and use Tax—a question on which Texas courts have avoided a clear-cut adjudication."

Section 1 of Article VIII has remained unchanged since its adoption as part of the Constitution of 1876 and provides:

"Section 1. Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. The Legislature may impose a poll tax. It may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this State. It may also tax incomes of both natural persons and corporations other than municipal, except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax; Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation, and provided further that the occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business."

Section 17 of Article VIII, which also was adopted in 1876 and has remained unchanged, provides that:

"Sec. 17. The specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other subjects or objects to be taxed *in such manner as may be consist-*

*ent with the principles of taxation fixed in this Constitution."* (Emphasis added)

Both section 1 and section 17 were offered in the Constitutional Convention of 1875 as parts of a comprehensive substitute for the original proposal on taxation prepared by the standing committee on Revenue and Taxation. (Journal of the Constitutional Convention, secs. 1 and 13, pp. 423–4). Section 1 was amended ten days later to read as finally adopted (pp. 525–6), but section 17 (then sec. 13) remained unchanged, except for section number. (p. 541).[1]

Appellant argues that section 17 "does not grant to the Legislature a general power to tax. By its terms, any tax levied under this Section must be *'in such a manner as may be consistent with the principles of taxation fixed in this Constitution'* (emphasis added). Thus, Article VIII, Section 1 governs tax legislation in Texas, and the power to levy a sales, excise or use tax falls beyond the purview of both Article VIII, Section 1 and Article VIII, Section 17."

To adopt the view that the enumeration in section 1 of four specific types of taxes the Legislature may levy constitutes a limitation upon the subjects of taxation available to the Legislature requires that section 17 be disregarded, or regarded as without meaning or purpose. Section 17 plainly affirms that "specification of the objects and subjects of taxation [as in section 1] shall not deprive the Legislature of the power" to tax other subjects and objects if "consistent with the principles of taxation fixed" in the Constitution. The limitation placed on the power of the Legislature is that no tax levy may contravene the principles of taxation set by the Constitution.

Principles of taxation found in section 1 are that all taxation must be equal and uniform, property must be taxed in proportion to value, occupation and income taxes may not be levied upon municipal corporations, and persons in mechanical and agricultural pursuits are exempt from occupation taxes. Further, household and kitchen furniture of families, to the worth of $250, must be exempt from taxation, and local occupation taxes, levied by cities and towns on professions and business, may not exceed one half the tax levied by the Legislature for the same period and on the same occupation.

Some of the identical principles of taxation stated in the Constitution of 1876 were placed in the first state constitution of Texas. The Constitution of 1845 required that taxation be equal and uniform "throughout the State" and that all property be taxed "in proportion to its value," except property the Legislature by "two-thirds of both Houses" should exempt from taxation. The Legislature was empowered to "lay an income tax" and to levy occupation taxes except on "pursuits either agricultural or mechanical." Specifically, the Legislature was authorized "to provide by law for exempt[ing]" $250 worth of household furniture "or other property belonging to each family in this State." (Constitution of Texas, 1845, Article Seventh, Secs. 27 and 28).

Numerous principles of taxation are fixed in the Constitution of 1876, in addition to the principles found in section 1. In section 2 principles particularly applicable to occupation taxes are stated, and section 3 requires that taxes be levied and collected by general laws and only for public purposes. Principles governing the taxation of corporations are found in section 4, and in sections 5 and 8 railroads are considered and principles of taxation with respect to them are there laid down. In other sections of Article VIII principles are fixed as to as-

---

1. The substitute proposal was offered by James Richard Fleming, a member of the standing committee, and the later amendment to section 1 was offered by Fletcher S. Stockdale, with the concluding proviso by Andrew Todd McKinney. All three delegates were lawyers. Fleming and Stockdale were natives of Kentucky and McKinney of Illinois. Webb and Carroll: The Handbook of Texas (1952).

sessment and the place of assessment and collection of taxes. The principle by which inhabitants of counties and cities may be released from payment of taxes levied for state or county purposes is stated in section 10. Further enumeration of underlying principles of taxation found in the Constitution is not necessary to illustrate the nature of the principles which the Legislature must observe in passing laws to tax the "objects and subjects of taxation."

The Supreme Court of Texas in 1907 recognized authority in the Legislature under section 17 of Article VIII to tax intangible assets of railroads "as a subject or object of taxation omitted from those specified in the previous sections of the article." *Missouri, Kansas & Texas Railway Company of Texas v. Shannon,* 100 Tex. 379, 100 S.W. 138, 142 (1907). Under section 8 of Article VIII the principle is fixed that all property of railroads "shall be assessed, and the taxes collected in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county." In addition, section 11 requires that all property, "whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where situated."

With the levy of a tax on intangible assets of railroads, the Supreme Court was concerned with the question, ". . . can this value which proceeds from the working whole of the business be held to be situated in a county in which only a part of the physical properties are located?" As pointed out by Chief Justice Gaines, if the makers of the Constitution had had that problem in mind, ". . . they would probably have made some specific provisions in reference to it as was made in case of the rolling stock" by which assessment in gross is made in the county of the company's principal office, with apportionment to the several counties by the State Comptroller.

The Court found the solution in section 17. "But that they [the framers of the Constitution] apprehended that some question of a like character might arise . . . is shown as we think in a subsequent section of that article, which is" section 17 of Article VIII. The Court held that section 17 "affords ample authority to the Legislature to tax such intangible assets as a subject or object of taxation omitted from those specified in the previous sections . . . ." (100 S.W. 142)

Later cases dealing with a tax on intangible assets and holding the statutes valid under the doctrine of *Shannon, supra,* include *Texas Pipe Line Company v. Anderson,* 100 S.W.2d 754, 763 (Tex.Civ.App. Austin 1937, writ ref.) and *Reagan County Purchasing Company v. State,* 110 S.W.2d 1194, 1201 (Tex.Civ.App. El Paso 1937, writ ref.).

The Comptroller relies upon three cases in support of the contention that the Legislature has plenary power to tax objects and subjects not specified in section 1 of Article VIII by reason of the language of section 17. In *State v. Jones,* 290 S.W. 244 (Tex. Civ.App. Amarillo 1926, rev. on other grounds 5 S.W.2d 973), the state's inheritance tax was held constitutional as a tax on the privilege to succeed to property. The Supreme Court in *State v. Wynne,* 134 Tex. 455, 133 S.W.2d 951 (1939), upheld a statute affording a lien as a means of enforcing collection of a motor fuel tax, and stated, "The burden of levying taxes rests on the Legislature, and that body has plenary power of prescribing the mode of taxation to raise revenue . . . ." by reason of the provisions found in section 17 of Article VIII. In *City of Beaumont v. Fertitta,* 415 S.W.2d 902 (Tex.Sup.1967), the Supreme Court said, "The Legislature through its general powers inherent in sovereign governments could provide for taxation of property not covered by Article VIII, Section 1, unless prohibited by the Constitution," and quoted section 17 of Article VIII.

Appellant argues that decisions in these cases do not meet the issue in this case that a limited sales, excise and use tax, not

being specified in section 1 of Article VIII, is not a tax the Legislature has power to levy, despite the enlargement seemingly afforded under section 17. Appellant argues that *Jones*, when considered by the Commission of Appeals, did not hold the inheritance tax constitutional even though not a tax named in section 1; that *Wynne* upheld only an enforcement procedure, and the tax by its own terms was an occupation tax mentioned in section 1; and that *Fertitta* held only that the Legislature may tax property owned by a city but not used for public purposes.

Appellant states that the Comptroller "is unable to cite one case . . . [that] expressly holds that a tax of a type other than one of the four enumerated in Article VIII, Section 1 is constitutional," but concedes that ". . . Appellant is unable to cite any case which expressly holds that a tax of the type other than one of the four enumerated is not constitutional."

The interpretive commentary under section 17, in Vernon's Annotated Constitution of Texas, observes:

"Although Art. 8, sec. 17 would seem to indicate that any taxing power inherent in sovereign governments would of necessity also belong to the government of Texas unless specifically denied it by the constitution, the courts have avoided a clear cut decision as to whether or not the legislature has power to levy sales or excise taxes without being designated and intended as occupation taxes. Although recent years have indicated a wide acceptance of the opinion that the legislature has a general taxing power, the issue has not been finally settled, and the seemingly limiting provisions of Art. 8, sec. 1 rather than the broad grant of power given by this article still govern tax legislation." Thomas: Interpretive Commentaries, vol. 2, p. 565 (1955).

At least one legal writer has concluded that the "listing [in section 1] is not exclusive . . . because elsewhere it is provided that 'the specification of the objects and subjects of taxation shall not deprive the Legislature of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this Constitution.'" (Section 17). But the writer continues, "In the absence of clear cut judicial construction of the latter provision with respect to taxes not specifically mentioned in article VIII, section 1, such as a retail sales tax, the provisions of the section can nevertheless be said to govern tax legislation and development at the state level in several respects." Anderson: "Constitutional Aspects of Revenue and Taxation in Texas," 35 Texas L.Rev. 1011, 1013 (1957).

We hold that although the types of taxes imposed by the Limited Sales, Excise and Use Tax Act are not enumerated in section 1 of Article VIII of the Constitution, the Act is not by reason of such omission invalid and in violation of the Constitution. We hold that the Legislature has plenary power to require other subjects and objects to be taxed if that power is exercised in a manner consistent with the principles of taxation fixed in the Constitution.

Under its last two points of error appellant contends (1) that certain exemptions contained in the Act are in violation of the Constitution of Texas because the exemptions render the tax unequal and not uniform and (2) the exemptions deny appellant equal protection guaranteed under the Fourteenth Amendment of the Constitution of the United States.

Appellant's position is that the sections of the Act which exempt wrapping, packing and packaging supplies and containers, when used in the furtherance of *sales,* lead to a taxation scheme that is not uniform and equal because the same materials, when used in the furtherance of *services,* are not exempted.

One exemption is under Article 20.-04(E)(2) of the Act, as follows:

"(E) Property Used in Manufacturing, Packaging and Containers.

\* \* \* \* \* \*

"(2) Wrapping, Packing and Packaging Supplies.

"(a) There are exempted from the taxes imposed by this Chapter the receipts from sales of all internal and external wrapping, packing, and packaging supplies and materials to any person for use in wrapping, packing or packaging any tangible personal property for the purpose of expediting or furthering in any way the sale of that property.

"(b) For the purpose of this Section, wrapping, packing and packaging supplies shall include, but shall not be limited to:

"(i) Wrapping paper, wrapping twine, bags, cartons, crates, crating materials, tape, rope, labels, staples, glue and mailing tubes.

"(ii) Property used inside a package in order to shape, form, preserve, stabilize or protect the contents, such as, but not limited to, excelsior, straw, cardboard fillers, separators, shredded paper, ice, dry ice, cotton batting, shirt boards, hay and laths."

Another exemption is under Article 20.-04(E)(3) of the Act, as follows:

"(E) Property Used in Manufacturing, Packaging and Containers.

\* \* \* \* \* \*

"(3) Containers.

"(a) There are exempted from the taxes imposed by this Chapter the receipts of sales, leases, or rentals of, and the storage, use or other consumption in this State of:

"(i) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container.

"(ii) Containers when sold with the contents if the sale price of the contents is not required to be included in the measure of the taxes imposed by this Chapter.

"(iii) Returnable containers when sold with the contents in connection with a retail sale of the contents or when resold for refilling.

"(b) As used in this Article, the term 'returnable containers' means containers of a kind customarily returned by the buyer of the contents for reuse. All other containers are 'nonreturnable containers.'"

 It is settled that the Legislature, in determining classifications for purposes of taxation, has broad powers, and that the courts will interfere only when there is a clear showing that there is no reasonable basis for an attempted classification. *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896 (1937). In passing upon the constitutionality of a classification, the test applied by the courts is whether the classification made by the Legislature is essentially arbitrary, unreasonable, and not based upon reality. *Dallas Gas Co. v. State,* 261 S.W. 1063, 1069 (Tex.Civ.App. Austin 1924, writ ref.). We have carefully examined the record and the decisions relied upon by appellant, and we conclude that appellant has failed to demonstrate that the classification resulting from the exemptions in the Act, as between container materials used in furtherance of sales and the same or similar materials used to further services, is without reasonable basis in the nature of the businesses and that the law operates unequally upon subjects between which there is no real difference to justify separate treatment. *Texas Company v. Stephens,* 100 Tex. 628, 103 S.W. 481 (1907).

The effect of the Act and the exemptions allowed in the Act is to permit the user of container materials, sold with the merchandise contained in the packaging, to recover

the cost of the materials when the cost is included in the total sales price, upon which total the sales tax is based. Appellant is engaged in a business which does not sell tangible personal property upon which taxes are levied. Appellant sells services, in furtherance of which container materials are used, but title to the containers is retained by the business rendering the service. Appellant made proof that its charges for services include both labor and "furnishing materials" for packing and containers. Since appellant had not paid the tax, until required by the Comptroller, the sales or use tax was not included in its charges for services.

■ Appellant suggests that moving and transfer companies are the only businesses using packing and packaging materials in furtherance of a service, but the undisputed evidence is that, in addition to moving and transfer companies, laundry and dry cleaning industries, transportation industries, and "lump-sum" contractors are liable for the sales or use tax. Materials used by transportation companies include lumber for shoring and bracing to prevent shifting of cargo in trucks, trailers, and railroad boxcars. It appears from the record that the class to which appellant belongs, being those engaged in selling services or engaged in moving and transferring goods, is taxed equally and uniformly as a class, and that all of the businesses with which appellant is competitive are treated equally under the statute.

■ The only difference created by the exemptions in the Act, between sellers of tangible goods using container materials and sellers of services using container materials, is that the former may postpone payment of the tax until the packaged tangible goods are sold and the latter must pay the tax on purchase of the container materials and look to recovery, if any, in service charges which may include labor, use of containers, and the use tax. This differ-

ence is not an unreasonable or arbitrary tax procedure, and the two treatments, though different, are not in the final result a discrimination against the class in which appellant operates.

■ The attack appellant makes on the statute under the final point of error must fail because there is no showing that the exemptions under the Act result in a form of invidious discrimination or that they are manifestly arbitrary, a burden required of appellant in attacking the statute as violative of its rights under the Fourteenth Amendment.

The Supreme Court, in *Hurt v. Cooper, supra,* stated that on the question of uniformity and equality within the different classes taxed "the requirements under the Fourteenth Amendment . . . as interpreted by" the Supreme Court of the United States "are essentially the same as the requirements under" the Constitution of Texas. "Each requires," the Court added, "that all persons falling within the same class must be taxed alike. Each recognizes the power of the Legislature to make classifications, and each requires that such classifications, when made, must not be unreasonable, arbitrary, or capricious." (110 S.W.2d 901)

In a recent case the Supreme Court of the United States stated:

"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. * * * Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351.

In *Lehnhausen* the Court cited and quoted from its earlier decision in *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526–527, 79 S.Ct. 437, 440–441, 3 L.Ed.2d 480. In *Allied Stores* the Court stated, "Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value."

In *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590, on the subject of classification, the Court stated, "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago [in 1890] concluded that 'the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation' [*Bell's Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895], and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that *in taxation, even more than in other fields, legislatures possess the greatest freedom in classification.* Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, *the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking* the legislative arrangement *to negative every conceivable basis which might support it."* (Emphasis added)

■ Appellant has failed under its burden to show that the classifications resulting from exemptions provided under the Act constitute a hostile and oppressive discrimination against appellant as one of the entities engaged in the moving, transfer and storage business.

The judgment of the trial court is affirmed.